UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FREDERICK H. MURRAY, JR., | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | No. 2:11-cv-386-JAW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the grounds that the administrative law judge (i) violated his due process rights in denying his request that his sister testify at his hearing, (ii) failed to consider the effects of his extreme obesity on the severity of his other impairments, as required by Social Security Ruling 02-1p ("SSR 02-1p"), (iii) erroneously found, at Step 2, that he did not suffer from a generalized anxiety disorder and that his diabetes and sleep-related breathing disorders were nonsevere, and (iv) transgressed the requirements of Social Security Ruling 96-7p ("SSR 96-7p"), invalidating his determination of the plaintiff's credibility, by excluding the plaintiff's sister's hearing testimony. *See* Plaintiff's Itemized Statement of Errors ("Statement of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 22, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Errors") (ECF No. 17) at 4-15.[2] I find no reversible error and, hence, recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of pervasive developmental disorder and affective disorder not otherwise specified, Finding 3, Record at 15; that he retained the RFC to perform a full range of work at all exertional levels and was capable of performing simple, repetitive work, tolerating occasional changes in the work setting, and interacting appropriately with supervisors and co-workers, but not with the public, as a function of the job, Finding 5, *id.* at 17; that, considering his age (51 years old, defined as an individual closely approaching advanced age, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 22; and that he, therefore, was not disabled from December 31, 2006, his alleged disability onset date, through March 17, 2011, the date of the decision, Finding 11, *id.* at 23-24.[3] The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[2] In his statement of errors, the plaintiff also sought reversal and remand on the basis that the administrative law judge abused his discretion in declining to admit, post-hearing, a residual functional capacity ("RFC") opinion by treating physician William F. Schirmer, M.D. *See* Statement of Errors at 10-12. However, at oral argument, his counsel effectively withdrew that point of error, stating that he would not address it.

[3] The plaintiff was insured, for purposes of SSD benefits, through December 31, 2006. *See* Finding 1, Record at 15. Hence, to be eligible to receive SSD benefits, he was required to demonstrate that he was disabled on or before that date. *See, e.g., Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status.").

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Due Process Violation in Excluding Testimony

At the start of the plaintiff's February 9, 2011, hearing, his counsel reminded the administrative law judge that, as he had indicated in a pre-hearing letter, he intended to call the plaintiff's sister, Kathy Black, an important support person, to testify. *See* Record at 573. The administrative law judge asked the plaintiff's counsel to make an offer of proof with respect to Black's testimony. *See id*. at 577. The plaintiff's counsel objected, arguing that it would be more efficient for him simply to present the sworn testimony than to repeat what he expected Black to say and that such an offer of proof was unnecessary. *See id*. at 577-78. He did explain that he expected Black to testify about all aspects of the plaintiff's activities of daily living,

including cooking, groceries, laundry, self-care, socializing, not finishing tasks, and needing help with socialization. *See id*. at 578. The administrative law judge responded: "No, I know what she can talk about. Tell me what she's going to say regarding his activities of daily living." *Id*. The plaintiff's counsel protested that he did not understand why this was a requirement in order for Black to testify. *See id*. at 579. The administrative law judge then ruled that the plaintiff had constructively waived her right to make an offer of proof. *See id*.

At the close of the hearing, the administrative law judge stated that, although a written statement from Black was already part of the record, he would afford the plaintiff an opportunity to present an affidavit from Black. *See id*. at 640. The plaintiff's counsel agreed to do so, with the proviso that he was not withdrawing his objection to the preclusion of Black's hearing testimony. *See id*. at 640-41. Post-hearing, he submitted an affidavit of Black dated February 15, 2011. *See id*. at 292-95.

The administrative law judge ultimately gave little weight to Black's earlier written statement or her affidavit on the bases that (i) she was a non-medical source, and (ii) the degree of limitations cited was inconsistent with the objective findings of record, the testimony of James Claiborn, Ph.D., an impartial medical expert present at hearing, and the plaintiff's own reported activities of daily living. *See id*. at 21.[4]

The plaintiff argues that the administrative law judge had no authority to require a detailed offer of proof in advance of witness testimony, and that doing so frustrated his due process rights. *See* Statement of Errors at 6. He asserts that Black's testimony would not have been repetitive because Black would have been able to provide a more complete description of his limitations than he could, given his pervasive developmental disorder. *See id*. He adds that

---

[4] The administrative law judge mistakenly referred to Dr. Claiborn as "Ira Hymoff, Ph.D." Record at 18. Nothing turns on the error.

4

the provision of her affidavit was an inadequate substitute for her live testimony, depriving the administrative law judge, the plaintiff's counsel, and Dr. Claiborn of the opportunity to obtain additional details and important information. *See id*. at 7. He contends that, without the benefit of Black's testimony or affidavit, the opinions of both experts present at the hearing, Dr. Claiborn and vocational expert Jane Gerrish, necessarily were incomplete, depriving the plaintiff of "the required full opportunity to be heard[.]" *Id*.

As the plaintiff recognizes, *see id*. at 5-6, in *Newcomb v. Astrue*, No. 2:11-cv-02-GZS, 2012 WL 47961 (D. Me. Jan. 6, 2012) (rec. dec., *aff'd* Jan. 24, 2012), this court held that the exclusion of a claimant's case worker's testimony did not violate due process in circumstances in which the administrative law judge reasonably viewed the case worker as a "treating provider," not a lay witness, and the claimant had failed to provide requested treatment records in advance of the hearing, *see Newcomb*, 2012 WL 47961, at *7-*8. Alternatively, this court held, the plaintiff had failed to make the showing of prejudice necessary to warrant reversal and remand on account of a due process violation when the case worker's testimony "would have essentially corroborated, and been cumulative of, that of the plaintiff." *Id*. at *8.

The plaintiff argues that this case is distinguishable from *Newcomb* in that (i) Black was not a treating provider, and there was no issue regarding an absence of treatment records, and (ii) Black's testimony would not have been cumulative because she offered a different perspective on his limitations than he could. *See* Statement of Errors at 6.

Nonetheless, as this court noted in *Newcomb*: "At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands." *Newcomb*, 2012 WL 47961, at *7 (citation and internal quotation marks omitted).

There is no due process violation when "the limitations imposed on [a] claimant's attorney's elicitation of evidence from [a] claimant [are] wholly reasonable, including limiting cumulative testimony." *Id*. (citation omitted).

The plaintiff cites no authority for the proposition that the administrative law judge's requirement of a detailed offer of proof was impermissible or unreasonable. From all that appears, the administrative law judge intended to ascertain whether Black's testimony was going to be cumulative, a proper subject of inquiry. The plaintiff's counsel did not comply. In those circumstances, the preclusion of Black's testimony does not offend due process.[5]

In any event, even if the preclusion of Black's testimony violated the plaintiff's due process rights, the plaintiff, like the claimant in *Newcomb*, fails to demonstrate prejudice warranting reversal and remand. He argues that he was prejudiced in that:

1. Dr. Claiborn testified that it would be relevant to know about accommodations that the plaintiff needed on account of his problems getting along with others, and Black's affidavit set forth functional restrictions that would require accommodations by any employer. *See* Statement of Errors at 8.

2. Had Dr. Claiborn reviewed Black's affidavit and heard her testimony, the outcome might have been different, because he would have had the opportunity to factor in the restrictions that she described. *See id*. at 9.

---

[5] At oral argument, the plaintiff's counsel acknowledged that he had been unable to find authority that the requirement of a proffer of evidence was improper. However, he cited two criminal cases, *Luce v. United States*, 469 U.S. 38 (1994), and *United States v. Parkinson*, 991 F.2d 786 (1st Cir. 1993), which applies *Luce*, for the proposition that a proffer of evidence is an inadequate substitute for live testimony. *Luce* and *Parkinson* do not help the plaintiff. They stand for the proposition that, in order to preserve an appeal regarding certain *in limine* rulings, a criminal defendant must actually testify. *See Luce*, 469 U.S. at 41-43; *Parkinson*, 991 F.2d at *2-*4. In that context, the Supreme Court observed: "Requiring a defendant to make a proffer of testimony is no answer; his trial testimony could, for any number of reasons, differ from the proffer." *Luce*, 469 U.S. at 41 n.5. Neither case addressed the question of whether a requirement of a proffer before permitting testimony offends due process.

In the portion of the hearing transcript cited by the plaintiff, his counsel asked Dr. Claiborn whether it would be relevant "to know about accommodations with regard to problems that the [plaintiff] had getting along with others[.]"  Record at 626-27.  Dr. Claiborn responded: "If there is some significant evidence about his having difficulty getting along with others, knowing about that would certainly . . . be relevant."  *Id*. at 627.  Yet, in response to earlier questioning by the plaintiff's attorney, Dr. Claiborn indicated, in essence, that Black's testimony was not necessary:

> BY THE ATTORNEY:
> Q      Would your understanding of the functional problems benefit from a – benefit from the observations of his sister, given the degree of contact and the role that she has played as described by the [plaintiff]?
>
> ALJ:   Yeah, that's argument.  There's not a basis for that.  We don't know what her testimony would be or what her – anything about what she'd say.  Can you – she gave a statement at Exhibit 4-E.  Is there something from that statement that you want to –
>
> BY THE ATTORNEY:
> Q      With regard to the ADLs [activities of daily living], specifically, would it be helpful to your understanding of his functionality to have somebody from outside the home, who has been to the home, describe the disorder and the problems that the [plaintiff] has with personal hygiene, dressing, keeping house and so on?
>
> A      Well, I thought he described things adequately.  I mean, he says he doesn't bathe very often, often going weeks without doing that.  I asked about organization of his possessions and things.  He seems to be able to keep those organized and categorized.  And he may have an excess of things by most of our standards, but it's not, apparently, causing marked impairment of function as I understand things.

*Id*. at 622-23.

Ultimately, Black's affidavit echoed the plaintiff's testimony concerning his restrictions; for instance, that he had lived in his parents' house since his birth, did not bathe or clean house regularly, had trouble finishing projects, had little to no social life outside of family, had

obsessive compulsive tendencies such as checking locked doors, collected hundreds of Mickey Mouse items and movies, had never dated, and was dependent upon his sister and his father. *Compare* Record at 581-82, 589-90, 592-93, 595-97, 599-600, 604-05, 608 (plaintiff's testimony) *with id*. at 292-94 (Black affidavit).

Because Dr. Claiborn took those asserted restrictions into account and indicated that Black's description of the plaintiff's activities of daily living was unnecessary to his analysis, the plaintiff falls short of demonstrating a reversible due process error.

### B. Failure To Take Into Account Obesity

The plaintiff next faults the administrative law judge for failing to find that his severe obesity was a medically determinable impairment and, hence, omitting to take it into account in the remainder of the sequential evaluation analysis, as required by SSR 02-1p. *See* Statement of Errors at 9-10. He argues that the error was not harmless given findings of a treating physician, Dr. Schirmer, that the plaintiff's excess weight exacerbated his depression. *See id*. at 10.

The administrative law judge did find that the plaintiff had a medically determinable impairment of obesity. *See* Record at 15. However, he judged it nonsevere, explaining:

> At hearing, the [plaintiff] was questioned at length whether his obesity affects his residual functional capacity. He testified that his obesity results in low self-worth, and increases his anxiety when facing the public. While the undersigned recognizes that obesity can limit an individual's ability to function, the evidence of record does not document significant limitations as a result of the [plaintiff's] weight problem. There is no evidence that the [plaintiff's] obesity has resulted in an exacerbation of his co-existing medical problems, and no treating or examining physician has placed limitations on the [plaintiff's] ability to function as a result of his obesity.

*Id*.

As counsel for the commissioner contended at oral argument, the administrative law judge reasonably found that the evidence of record did not document significant limitations

stemming from the plaintiff's obesity. While Dr. Schirmer, of Martin's Point Health Care, did state that the plaintiff's excess weight exacerbated his depression, he did not purport to quantify how. *See, e.g., id*. at 357 (note of December 30, 2009, under heading of Depression/Anxiety, that "he will get back to exercise and lo[s]e some weight and get a better feel for hims[el]f"), 418 (note of March 4, 2008, that "[w]e realize that overweigh[]t, no job, poor sleep, no exer[cise] all impact his depression. He is working on exercise and has started already.").

In any event, as the commissioner's counsel alternatively argued, any error was harmless. This court has held that "an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). The administrative law judge adopted the opinion of Dr. Claiborn that the plaintiff suffered from a pervasive developmental disorder and a depressive disorder and that those conditions resulted in certain functional restrictions, including an inability to work with the public. *Compare* Findings 3, 5, Record at 15, 17 *with id*. at 620-22. In formulating that opinion, Dr. Claiborn expressly relied in part on the Martin's Point Health Care records, which he stated "certainly address the degree of depression and anxiety as impacting [the plaintiff's] functioning to a mild to moderate degree." *Id*. at 620-21. Therefore, he factored into his analysis any exacerbation of depression caused by the plaintiff's obesity.

Reversal and remand is unwarranted on the basis of the second point of error.

### C. Omission of Impairments at Step 2

The plaintiff next argues that the administrative law judge erred, at Step 2, in determining that he had no medically determinable impairment of generalized anxiety disorder and that his diabetes and sleep-related breathing disorders were nonsevere. *See* Statement of Errors at 12-13.

The administrative law judge did not err in finding no separate anxiety disorder impairment. Dr. Claiborn testified that the plaintiff's anxiety features were "subsumed under the pervasive developmental disorder." Record at 620. Dr. Claiborn took the plaintiff's anxiety features into account in formulating an RFC for the plaintiff, *see id*. at 620-22, and the administrative law judge adopted that RFC, *see* Finding 5, *id*. at 17.

The plaintiff correctly notes that the record is devoid of any expert opinion evidence regarding his physical impairments. *See* Statement of Errors at 12-13. In the absence of reliance on an expert's opinion, an administrative law judge, as a layperson, may make a finding of nonseverity at Step 2 only to the extent that such a judgment can be made as a matter of common sense. *See, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record."); *Stanwood v. Bowen*, 643 F. Supp. 990, 991 (D. Me. 1986) ("Medical factors alone may be used only to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment. . . . [A]n impairment is to be found not severe only if it has such a minimal effect on the individual's ability to do basic work activities that it would not be expected to interfere with his ability to do most work.") (citations and internal quotation marks omitted).

As concerns both the plaintiff's diabetes and his sleep-related breathing disorders, such a judgment could be made as a matter of common sense in this case. The administrative law judge correctly observed that the record evidence revealed that (i) the plaintiff's type II diabetes mellitus was "under excellent control with diet and exercise[,]" Record at 15; *see also id*. at 553, 557, 560, 564, and (ii) the plaintiff reported improvement in sleep with trials of different medications, stating, for example, on June 30, 2009, that he was "satisfied with his current sleeping function" on Elavil, *id*. at 15, 393; *see also id*. at 378, 394, 402, 404. These were sufficient bases on which to conclude, without the aid of a medical expert, that the plaintiff's diabetes and sleep-related breathing disorders were nonsevere.

### D. Challenge to Credibility Determination

The plaintiff finally argues that the administrative law judge transgressed the requirements of SSR 96-7p in deeming him only partially credible after barring his sister's testimony. *See* Statement of Errors at 12-15; *see also* SSR 96-7p at 133 ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual[.]").

The plaintiff argues that Black's testimony would have corroborated his own testimony as well as the records and opinions of a treating counselor, Allison Darden, L.C.P.C., and that, had Black testified, the administrative law judge would have been able to examine her, further explore her knowledge and observations, and test her answers to aid him in making a credibility determination. *See* Statement of Errors at 14. He adds that the administrative law judge erroneously relied on the opinions of Dr. Claiborn, which were based on an incomplete record, Dr. Claiborn having been deprived of the benefit of Black's testimony. *See id*. at 14-15. He

contends that the error is not harmless because "[i]t is reasonably possible, if not likely, that [Black's] testimony would have changed the ALJ's credibility determination." *Id*. at 15.

I find no error. As discussed above, the plaintiff has not made a persuasive case that the administrative law judge erred in excluding Black's testimony based on his counsel's failure to provide the requested detailed offer of proof. Thus, her testimony supportably was excluded from the "case record" for purposes of SSR 96-7p. In any event, the administrative law judge permitted the plaintiff to submit an affidavit of Black, which he took into consideration, and Dr. Claiborn testified, in effect, that the plaintiff had provided sufficient detail about his activities of daily living that he did not need Black's testimony on that subject. Finally, the administrative law judge articulated several reasons why he found the plaintiff less than credible, including evidence that, despite his dislike of crowds, he was able to attend movies, travel to Disneyland, and walk at the Mall for exercise, *see* Record at 20, and, although he attributed a failed attempt at gainful employment as a newspaper deliverer to "sleep issues," vocational rehabilitation records indicated that he went into the job with an "it will not work attitude," and he admitted to a treating source that the goal of finding employment was primarily others' goal rather than his, *see id*. at 21.

In these circumstances, it is unlikely, rather than reasonably possible, that Black's testimony would have altered the administrative law judge's credibility assessment.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

*which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge